William G. KALIDEN, Jr., Plaintiff,

v.

SHEARSON LEHMAN HUTTON, INC., Defendant.

Civ. A. No. 89–1963.

United States District Court, W.D. Pennsylvania.

Aug. 14, 1991.

Ken Gormley, John Hogue, David B. Mulvihill, Jr., Cindrich and Titus, Pittsburgh, Pa., for plaintiff.

Terrence H. Murphy, Kleet, Lieber, Rooney and Schorling, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

LEE, District Judge.

Presently before this Court is a Motion by defendant, Shearson Lehman Hutton, Inc., (Shearson), to Compel Arbitration [1] of the claims of plaintiff, William G. Kaliden, Jr., (Kaliden).

This case arises out of Kaliden's claim that Shearson terminated his employment because of his age and non-job-related hearing impairment in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (ADEA), and the Pennsylvania Human Relations Act; 43 P.S. § 951 *et seq.*, (PHRA).

On November 15, 1984, Kaliden was hired by Shearson as Vice President and Regional Sales Director for its mid-Atlantic Region. At the time of his hire, Kaliden completed an application for employment in which he agreed:

> that any controversy arising out of or in connection with my compensation, employment or termination of employment shall be submitted to arbitration before the National Association of Securities Dealers, Inc., the New York Stock Exchange, Inc., or the American Stock Exchange, Inc., and be resolved in accordance with the rules in effect of such entities.

On January 16, 1985, in order to retain his existing securities registration while employed by Shearson, Kaliden executed a Uniform Application for Securities Industry Registration or Transfer, commonly known as Form U-4. On January 16, 1987, Kaliden became a registered general securities representative of the New York Stock Exchange (NYSE), after having successfully obtained his Series 7 licensure, and, completing an additional Form U-4. Under the terms of each application, Kaliden agreed:

> to arbitrate any dispute, claim or controversy that may arise between me and my firm ... that is required to be arbitrated under the rules, constitution or by-laws of the organizations with which I register....

The NYSE Constitution provides that any controversy between a member corporation, such as Shearson, and any other

---

1. Defendant's motion alternatively requests a stay pending a ruling by the United States Supreme Court in the Case of *Gilmer v. Interstate/Johnson Lane Corporation,* 500 U.S. ——, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Obviously, since *Gilmer* has been decided, there is no need to address such request.

person, arising out of the business of a member, shall be arbitrated. NYSE Constitution, Art. XI, Sec. 1, 2, NYSE Guide (CCH) ¶ 1501. Rule 347 of the NYSE also provides:

> any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure described elsewhere in these rules.

Shearson terminated Kaliden's employment on November 10, 1987, claiming that such termination was part of a corporate-wide staff and cost reduction efforts. On September 15, 1989, Kaliden commenced the present action, claiming that his termination was based upon his age and non-job-related hearing impairment.

Shearson moved for leave to amend its answer on June 19, 1990, to add the affirmative defense that Kaliden's claims were barred because of his agreement to submit claims arising out of his employment with Shearson to arbitration. This Court granted Shearson's motion and the additional defense was incorporated. Despite demands made by Shearson that Kaliden submit all of his claims in the lawsuit to arbitration, Kaliden refused to place his claims before an arbitration tribunal.

Shearson now moves this Court to Compel arbitration of the aforesaid claims. Because of the strong federal policy favoring arbitration, and the holding in *Gilmer v. Interstate/Johnson Lane Corporation,* 500 U.S. ——, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), such motion shall be granted.

The Federal Arbitration Act (Act), 9 U.S.C. § 1 et seq., was intended to "revers[e] centuries of judicial hostility to arbitrate agreements" by "plac[ing] arbitration agreements upon the same footing as other contracts." *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 510–511, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974). The Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. The express mandate of the Act also provides that a court must stay its proceedings if it is satisfied that an issue before it is subject to valid written arbitration agreement, 9 U.S.C. § 3; and it authorizes a federal district court to direct the parties to proceed to arbitration in those instances where it is clear that an agreement to arbitrate has been made and there has been a "failure, neglect or refusal" to comply with the agreement. 9 U.S.C. § 4.

The United States Supreme Court has made clear that the Act establishes a federal policy favoring arbitration and requiring that such provisions be rigorously enforced. See *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 29, 103 S.Ct. 927, 943, 74 L.Ed.2d 765 (1983) and *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985)). In *Shearson/American Express,* the Supreme Court held further that the duty to enforce arbitration agreements is not diminished when a party bound by the agreement raises a claim founded on statutory rights. This expanded the Act to require that certain claims brought under Section 10(b) of the Securities Exchange Act and under RICO be subject to arbitration. The Supreme Court has also held enforceable arbitration agreements relating to claims arising under Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2). *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

In *Gilmer v. Interstate/Johnson Lane Corporation,* 500 U.S. ——, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the Supreme Court held that since neither the text nor the legislative history of the ADEA explicitly precludes arbitration, one is bound by his agreement to arbitrate unless one can show an inherent conflict between arbitration and the ADEA's underlying purposes. The

facts in *Gilmer*, mirror those in the case at bar.

Like Kaliden, Gilmer was required by his employment to register as a securities representative with the NYSE and executed a Uniform Application for Securities Industry Registration or Transfer which contained an agreement to arbitrate pursuant to NYSE Rule 347. At the age of sixty-two (62), Gilmer's employment was terminated. After first filing an age discrimination charge with the Equal Employment Opportunity Commission, Gilmer brought suit in the United States District Court for the Western District of North Carolina alleging violation of the ADEA. In response to Interstate's motion to compel arbitration, the District Court denied the motion. The United States Court of Appeals for the Fourth Circuit reversed, finding "nothing in the text, legislative history, or underlying purposes of the ADEA indicating a congressional intent to preclude arbitration agreements." See *Gilmer v. Interstate/Johnson Lane Corporation*, 895 F.2d 195 (4th Cir.1990). The Supreme Court then granted certiorari to resolve a conflict among the Courts of Appeals.

The issue resolved by the Supreme Court in *Gilmer*, is the same one raised by Kaliden, whether a claim under the ADEA can be subjected to compulsory arbitration pursuant to an arbitration agreement in a securities registration application. In deciding the above issue in the affirmative, the Court found there was no inconsistency between the important social policies furthered by the ADEA and the enforcement of agreements to arbitrate age discrimination claims. Though arbitration and judicial resolution focus on specific disputes between the parties involved, the Court found that both of the dispute resolution mechanisms can further broaden social purposes. See *Gilmer, supra.*

In resolving the issue as to the adequacy of arbitration procedures, the Supreme Court stated "[w]e decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators." *Gil-*

*mer, supra,* quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 634, 105 S.Ct. 3346, 3357, 87 L.Ed.2d 444 (1985). The NYSE arbitration rules, which would apply to this case, also provide the following protection against biased panels:

(a) Parties are informed of the employment histories and are permitted to make further inquiries into the arbitrators' backgrounds, See 2 *CCH New York Stock Exchange Guide* ¶ 2608, p. 4314 (Rule 608) (1991);

(b) Each party is allowed one peremptory challenge and unlimited challenges for cause, *Id.,* at ¶ 2609 (Rule 609); and

(c) The arbitrators are required to disclose "any circumstances which might preclude [them] from rendering an objective and impartial determination." *Id.,* at ¶ 2610, p. 4315 (Rule 610).

The Federal Arbitration Act provides that courts may overturn arbitration decisions "[w]here there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(b). This acts as further protection against bias in the arbitration process.

Kaliden relies upon *Nicholson v. CPC International, Inc.,* 877 F.2d 221 (3d Cir. 1989) as the controlling law in the Third Circuit in arguing that ADEA suits are not subject to arbitration under the Federal Arbitration Act. The Supreme Court's recent ruling in *Gilmer,* however, effectively reverses *Nicholson,* and leaves this Court with no choice but to follow the mandates of *Gilmer.*

Kaliden further contends, however, that Shearson has waived its right to arbitration because the demand for arbitration came long after the suit was commenced and when both parties had engaged in extensive discovery.

 Under the federal policy favoring arbitration for resolution of disputes, waiver is not to be lightly inferred. *Gavlik Construction Co. v. H.F. Campbell Co.,* 526 F.2d 777, 783 (3d Cir.1975), *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir.1968). It is not the inconsistency of a party's actions, but the presence or absence of prejudice which is determinative of the

issue of waiver. In *Demsey & Associates, Inc. v. S.S. Sea Star,* 461 F.2d 1009, 1018 (2d Cir.1972) citing *Carcich, supra.,* the Second Circuit stated as follows:

"[m]erely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not necessarily constitute a waiver."

See *Gavlik Construction Co. v. H.F. Campbell Co.,* 526 F.2d at 783. Therefore, waiver of a contractual right to arbitrate must be established by clear and convincing proof that the party requesting a stay of judicial proceedings has acted in a manner inconsistent with arbitration and that these inconsistent acts have prejudiced the other party. *J.D. Fegely, Inc. v. Kline Iron & Steel Company, Inc.,* 1989 WL 71549, 1989 US Dist. LEXIS 7218, (E.D.Pa. June 27, 1989).

▉ . Shearson contends that prior to the Supreme Court granting certiorari in *Gilmer,* it had no basis to question the Third Circuit law enunciated in *Nicholson.* Once a split was created among the courts of appeal on the issue of arbitration of ADEA claims, Shearson moved to add the affirmative defense that Kaliden's claims were barred because of his agreement to arbitrate. It does not appear that Shearson acted in a manner inconsistent with arbitration in light of the potential changes in the decisional law that occurred during the pendency of the case.

The Ninth Circuit in *Fisher v. A.G. Becker Parabis, Inc.,* 791 F.2d 691 (9th Cir. 1986) allowed the defendant to move to compel arbitration more than three (3) years after the action began based upon the intervening decision in *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), which allowed the arbitration of securities law claims. The court found no waiver because before the *Byrd* decision defendant could not have demanded all the claims be submitted to arbitration. *Fisher,* 791 F.2d at 694, 697.

▉ Discovery taken by the parties, similarly, does not constitute a waiver of Shearson's right to compel arbitration in and of itself. In determining whether discovery of documents concerning arbitrable claims is sufficient to warrant a waiver, the court must again rely on the principle of prejudice to the opposing party. Sufficient prejudice to infer waiver might be found if the party seeking the stay took advantage of judicial discovery procedures not available in arbitration. See *Carcich v. Rederi A/B Nordie,* 389 F.2d at 696 n. 7, *Russo v. Simmons,* 723 F.Supp. 220, 223 (S.D.N.Y. 1989). There is no contention by Kaliden that Shearson has gained an unfair advantage through discovery, nor that Kaliden himself has been harmed through the discovery process. As such, there has been no waiver of Shearson's right to arbitration.

The remaining issue for the Court is whether the Motion to Compel Arbitration should be granted as to Kaliden's claim under the Pennsylvania Human Relations Act (PHRA). Both parties agree that there is no appellate court decision on whether arbitration could be compelled on PHRA claims. Shearson, however, contends that because the Supreme Court remanded a Title VII case for further consideration in light of *Gilmer,* Kaliden's handicap discrimination claim should also be sent to arbitration.

In *Alford v. Dean Witter Reynolds, Inc.,* 905 F.2d 104 (5th Cir.1990), the court held that a stockbroker fired by a brokerage firm could pursue a sex discrimination suit under Title VII of the Civil Rights Act and did not have to submit her claim to arbitration as called for in her employment contract. The Fifth Circuit concluded the case was governed by the Supreme Court's decision in *Alexander v. Gardner–Denver Company,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), which held that Title VII claims need not be relegated to the arbitration process in a collective bargaining agreement. The Supreme Court, after granting certiorari, vacated judgment and remanded the case for further consideration in light of *Gilmer.*

Shearson presumes the case was remanded because the Court in *Gilmer* distinguished the holding in *Gardner–Denver,* that there can be no compulsory arbitration

of a Title VII claim, in three respects. First, the *Gardner–Denver* line of cases involved the issue of whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. Second, because the arbitration in those cases occurred in the context of a collective bargaining agreement, the claimants were represented by their unions in the arbitration proceedings. The concern, therefore, was the tension between collective representation and individual statutory rights. Finally, those cases were not decided under the Federal Arbitration Act, which reflects a liberal policy in favor of arbitration.

Because of the above distinctions, Shearson contends the holding in *Gilmer* applies equally to Title VII, and therefore to Kaliden's handicapped discrimination claim under the PHRA. We are not ready to extend *Gilmer* to cover Title VII claims, nor is it necessary to do so. Kaliden's handicapped discrimination is a pendent state claim, for which we must predict how the Pennsylvania Supreme Court would rule if presented with such issue.

■■■ As a practical matter, the decision to allow arbitration of statutory claims should not be dependent upon the point of origin of the statute. The fact that Kaliden's rights emanate from the PHRA instead of Title VII of the Civil Rights Act of 1964 should not control our analysis. The compelling fact is Kaliden agreed "to arbitrate any dispute, claim or controversy that may arise between me and my firm" in his Form U–4 filed with the NYSE, and such agreement was upheld by the United States Supreme Court in *Gilmer.*

Kaliden made the bargain to arbitrate. He should be held to it unless the Pennsylvania Legislature expressed an intention to preclude a waiver of judicial remedies for rights under the PHRA. Neither the text of the PHRA, nor the legislative history reveals an explicit preclusion to arbitration. As the Supreme Court found in *Gilmer,* we find that there is no conflict between arbitration and the advancement of the underlying social policies of the PHRA.

Having concluded the arbitration procedure is conducive to the policies underlying the ADEA and the PHRA, Shearson's Motion to Compel Arbitration shall be granted.