In re AFTER SIX, INCORPORATED, (jointly administered with After Six Holdings, Inc., and After Six of Delaware, Inc.), Debtor.

**AFTER SIX, INCORPORATED and Official Committee of Unsecured Creditors,**

v.

**ABRAHAM ZION CORPORATION and Corestates Bank, N.A.**

Civ. A. No. 93–4361.
No. 93–1150S.
Adv. No. 93–0238S.

United States District Court, E.D. Pennsylvania.

April 11, 1994.

36

Neal D. Colton, Dechert, Price & Rhoads, Philadelphia, PA, for plaintiff After Six, Inc.

Marvin Krasny, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, for plaintiff Official Committee of Unsecured Creditors.

Leonard Zack, New York City, for defendant Abraham Zion Corp.

James L. Allison, Philadelphia, PA, for defendant CoreStates Bank.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This case was brought before the Court via appeal of the Abraham Zion Corporation from the July 7, 1993 Memorandum and Order issued by United States Bankruptcy Judge David A. Scholl granting the Motion for Summary Judgment of the debtor, After Six, Inc. and directing CoreStates Bank to immediately pay to After Six, Inc. some $500,000 in escrow funds which it (and its predecessor corporation, Philadelphia National Bank) had been holding since 1981. For the reasons delineated in the following paragraphs, the appeal is denied and the decision of the Bankruptcy Court is affirmed.

## I. HISTORY OF THE CASE.

This case arose in early 1993 when After Six, Inc., after filing a voluntary bankruptcy petition under Chapter 11 and commencing liquidation proceedings as debtor-in-possession, instituted this adversary proceeding pursuant to 11 U.S.C. § 542(a) seeking the declaration that the Abraham Zion Corporation (hereinafter "Zion") had no claim or interest in and to certain escrow funds and directing CoreStates to turnover those monies to After Six's estate. According to the complaint and the record evidence produced

in support thereof, the disputed funds had been placed into escrow with Philadelphia National Bank (PNB) in accordance with the terms of an agreement dated October 7, 1981. Under that agreement, After Six, Inc. sold the assets of two of its wholly owned subsidiaries, Koko Rainwear Corp. and Harry Fischer Corporation, to Zion. Pursuant to paragraph 13.3 of the agreement, these escrow funds were to secure After Six's obligation to indemnify Zion against any losses it may have incurred as the result of any claims arising out of the sale asserted on or before May 7, 1982.

On February 8, 1982, Zion's then-counsel gave notice to PNB of certain claims against it arising out of its purchase of Koko and -Fischer's assets which could become losses and directed PNB to retain the escrowed monies in their entirety until such time as the disputed claims could be resolved. Zion, however, apparently did nothing to resolve those alleged claims until October 21, 1984 when it filed suit in New York state court for some, but not all of the claims raised in its February, 1982 letter. Although that lawsuit was dismissed by the New York court on June 7, 1984 upon agreement of the parties that Zion could re-institute its action in Pennsylvania, it was not until over one year later in September, 1985 that Zion commenced an action in Pennsylvania by filing a praecipe for a writ of summons in the Court of Common Pleas of Philadelphia County. Zion, however, never filed a complaint in that action and it was for this reason that the action was non prossed on or about May 11, 1987. Thereafter, After Six agreed to the removal of the judgment of non pros but Zion did not file a complaint in the action until May 17, 1988 nor did it ever file an answer to the numerous affirmative defenses asserted in After Six's Answer with New Matter or proceed to take discovery in support of the allegations put forth in its complaint.

In late March, 1989, Zion's counsel withdrew from the Philadelphia County case giving as the reason therefor his client's refusal to cooperate with him. Although the Common Pleas Court stayed the proceedings for one month to allow Zion an opportunity to

procure new counsel, it never did so. A second judgment of non pros was subsequently entered against Abraham Zion for failure to appear at the status call on February 6, 1990. The Philadelphia County Court thereafter denied Zion's two petitions to strike the non-pros via orders dated April 4, and July 1, 1991 and its decision was affirmed by the Pennsylvania Superior Court. *See: Abraham Zion Corp. v. After Six, Inc.*, 414 Pa.Super. 611, 607 A.2d 1105 (1992). Zion's petition for appeal (allocatur) to the Pennsylvania Supreme Court was likewise denied. *See: Abraham Zion Corp. v. After Six, Inc.*, 533 Pa. 628, 621 A.2d 576 (1993).

Irrespective of the state courts' entry and refusal to grant Zion's petitions for removal of the judgment of non-pros, Zion has consistently refused and to this day still refuses to consent to CoreStates' release of the escrowed monies to After Six, thereby effectively preventing the now bankrupt debtor's estate from gaining access to those funds and prompting the debtor to file the instant adversary action. Notwithstanding that Paragraph 13.10 of the October 7, 1981 Agreement of Sale includes an option to submit any disputes arising out of the said agreement to arbitration, neither party sought to have the escrow dispute resolved through arbitration until after the pleadings in this matter were closed and the case scheduled for trial. Indeed it was not until May 18, 1993 that Zion filed a Motion to Stay the Proceedings Pending Arbitration. In response, After Six filed a cross-motion for summary judgment and it is from the Bankruptcy Court's Orders of June 23, 1993 (denying Zion's motion) and July 7, 1993 (granting After Six's motion) that Zion now appeals.

## II. *DISCUSSION.*

### A. *Zion's Waiver of Its Right to Appeal the June 23, 1993 Order.*

At the outset, we are confronted with the question of whether Zion's failure to file a separate notice of appeal within ten days of the date the Bankruptcy Court entered its Memorandum and Order of June 23, 1993 constituted a waiver of its appeal rights with respect to the denial of its motion for a stay of proceedings. Consequently, this court

must first determine whether Judge Scholl's June 23, 1993 ruling was interlocutory or constituted a final order within the meaning of the appropriate rules of court.

■■■ It is of course, axiomatic that district courts are vested with jurisdiction to hear appeals from the bankruptcy courts. 28 U.S.C. § 158(a) provides:

(a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

Federal law thus provides two avenues of appeal to district court from bankruptcy court orders. A party has an appeal as of right from final judgments, orders or decrees or an appeal by leave of court from an interlocutory order. *In re National Office Products, Inc.*, 116 B.R. 19, 20 (D.R.I.1990). The concept of finality is somewhat broader in the bankruptcy context than in ordinary civil litigation. *In re Hooker Investments, Inc.*, 937 F.2d 833, 836 (2nd Cir.1991); *In re Oglesby*, 158 B.R. 602, 604 (E.D.Pa.1993). *See Also: Locks v. U.S. Trustee*, 157 B.R. 89 (W.D.Pa.1993). Rather, in bankruptcy proceedings, it is generally the particular adversary proceeding or controversy that the court must have finally resolved, rather than the entire bankruptcy, for a decision to be final. *In re Oglesby*, at 604. Stated otherwise, to be final, an order in a bankruptcy proceeding need only conclusively determine a discrete dispute within the larger case; it does not need to dispose of the entire bankruptcy proceeding. *In re Hooker*, at 836; *In re Chateaugay Corp.*, 922 F.2d 86, 89–90 (2nd Cir.1990); *In re National Office Products*, *supra*, at 20. When an order, entered or not, resolves only a preliminary matter, it will not constitute a final order for purposes of an appeal. *Id.*

■■■ Moreover, the bankruptcy rules for filing a notice of appeal are mandatory and jurisdictional, and thus failure to file a timely notice of appeal deprives the district court of jurisdiction to review a bankruptcy court's final order or judgment. *In re Rozark Farms, Inc.*, 139 B.R. 463, 465 (E.D.Mo. 1992). Under Bankruptcy Rule 8001(a), an order is final and therefore appealable only after it has been entered on the docket of the bankruptcy case. *In re American Freight System, Inc.*, 158 B.R. 225, 226 (D.Kan.1993). Finally, under Bankruptcy Rule 8002, an appeal must be taken within ten days of the entry of the order appealed from, and a late filing is insufficient to vest the district court with jurisdiction of the appeal. *In re Colon*, 941 F.2d 242, 245 (3rd Cir.1991).

In the case at bar, Judge Scholl's Memorandum and Order of June 23, 1993 resolved only a preliminary matter in this case: whether or not the proceedings should be stayed to allow the issue of which party was entitled to the escrow monies to be determined by and through the arbitration process. Accordingly, we find that in denying the Zion Corporation's motion to stay, Judge Scholl entered an interlocutory order from which an appeal could only have been taken to this court upon leave having been granted to do so. As a result, Zion's failure to file an appeal within ten days of the entry date of that order did not effect a waiver of its right to appeal that issue at the conclusion of the underlying bankruptcy matter and did not operate to divest this court of jurisdiction to now consider Zion's appeal from the denial of its motion for stay.

B. *Whether the Underlying Dispute Over the Escrowed Funds Must be Resolved Through Arbitration.*

■■■ Because the district court sits as an appellate court in bankruptcy cases, its standard of review, like that of the Court of Appeals, is clearly erroneous as to findings of fact by the bankruptcy court and plenary as to conclusions of law. *Stendardo v. Federal Nat'l Mortgage Ass'n*, 991 F.2d 1089 (3rd Cir.1993); *In re Roth American, Inc.*, 975 F.2d 949 (3rd Cir.1992); *In re Oglesby*, *supra*, citing *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3rd Cir.1988). A "mixed" standard of review may be applied where mixed questions of law and fact are presented. *Mellon Bank, N.A.*

v. *Metro Communications, Inc.*, 945 F.2d 635, 641–642 (3rd Cir.1991).

 It is well recognized that there is a strong federal policy favoring arbitration embodied in the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, which generally requires rigorous enforcement of agreements to arbitrate. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220, 105 S.Ct. 1238, 1241–1242, 84 L.Ed.2d 158 (1985); *Sharon Steel Corp. v. Jewell Coal and Coke Co.*, 735 F.2d 775, 777 (3rd Cir.1984). Because arbitration generally involves a contract and a party cannot be forced to arbitrate something which he did not agree to, the first task of the court on a motion to stay a proceeding in favor of arbitration is naturally to determine whether the parties actually agreed to arbitrate the dispute. *Century Steel Erectors, Inc. v. Aetna Casualty & Surety Company*, 757 F.Supp. 659, 660 (W.D.Pa.1990).

 However, like any statutory directive, the mandate in favor of arbitration may be overridden by a contrary congressional command. The burden is on the party opposing arbitration to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. *Shearson/American Express, supra; In re Statewide Realty Co.*, 159 B.R. 719, 722 (Bankr.D.N.J.1993). If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from the statute's text or legislative history or from an inherent conflict between arbitration and the statute's underlying purposes. *Shearson*, 482 U.S. at 225, 107 S.Ct. at 2337; *In re Chorus Data Systems, Inc.*, 122 B.R. 845, 851 (Bankr.D.N.H.1990). In this regard, it has been said that the underlying consideration behind requiring stays of proceedings pending arbitration is the "unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Zimmerman v. Continental Airlines, Inc.*, 712 F.2d 55, 57–58 (3rd Cir.1983) quoting *Prima Paint Corp. v.*

*Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 404, n. 12, 87 S.Ct. 1801, 1806, n. 12, 18 L.Ed.2d 1270 (1967).

 In the bankruptcy context, it is incumbent upon the courts to carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause and thus the only proper inquiry for a bankruptcy court in these circumstances is whether the text or purposes of the Bankruptcy Code would be violated so significantly by enforcing an arbitration clause in the particular factual circumstances of the case that it can fairly be said that Congress would not have intended those provisions or purposes to be overridden by the Federal Arbitration Act. *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1161 (3rd Cir.1989); *In re Chorus Data Systems, Inc., supra*, 122 B.R. at 852. Stated otherwise, where the federal policy in favor of arbitration inherently conflicts with and jeopardizes another federal policy to protect the rights of creditors, a case-by-case balancing of hardships should be performed. *In re FRG*, 115 B.R. 72, 75 (E.D.Pa.1990).

 The policies and purposes underlying the Bankruptcy Code are many and varied. "The protection afforded by the discharge injunction ... furthers one of the primary purposes of the Bankruptcy Code—that the debtor have the opportunity to make a 'financial fresh start.'" *Green v. Welsh*, 956 F.2d 30, 33 (2nd Cir.1992); "The primary purpose of the bankruptcy statute is the collection and distribution of the debtor's estate to his creditors. A secondary purpose is to discharge the debtor's financial obligations and is designed to give the honest debtor the opportunity to reinstate himself in the business world ..." *In re LeMaire*, 898 F.2d 1346, 1352 (8th Cir.1990); "The general policy behind this section [§ 362, providing for an automatic stay of all proceedings against a debtor] is to grant complete, immediate, albeit temporary relief to the debtor from creditors, and also to prevent dissipation of the debtor's assets before orderly distribution to creditors can be effected." *Penn Terra Ltd. v. Department of Environmental*

*Resources,* 733 F.2d 267, 271 (3rd Cir.1984); "Protection and preservation of a debtor's assets so that the funds of a bankruptcy estate may be equitably distributed amongst creditors without unfair preference, is central to the statutory scheme of the Bankruptcy Code." *In re Elsinore Shore Associates,* 66 B.R. 723, 735 (Bankr.D.N.J.1986); "Policy of the Bankruptcy Code is to permit equality of distribution among claimants by balancing the interests of the affected parties—the d, creditors and employees ..." *In re Continental Airlines, Inc.,* 148 B.R. 207, 211 (D.Del.1992); "Basic purpose of the Bankruptcy Act is to give the debtor a 'new opportunity in life and a clear field for future effort unhampered by the pressure and discouragement of preexisting debt.'" *(In re Keniston,* 85 B.R. 202, 216 (Bankr.D.N.H. 1988).) This variety notwithstanding, central to all of the above-stated "purposes" is the idea that all of the debtors' property and assets be marshalled in a timely fashion and re-organized or liquidated in such a manner that all of its creditors receive partial or complete repayment of the amounts owed to the fullest extent possible.

▮ In this case, however, that purpose would have been frustrated had this matter been permitted to go to arbitration. For one, we note that conspicuously absent from this record is any evidence that Zion *ever* requested or sought to invoke the provisions of paragraph 13.10 of the October 7, 1981 Agreement of Sale. To be sure, it appears that Zion merely filed a motion with the Bankruptcy Court to stay the proceedings pending the outcome of arbitration. We do not equate the filing of a motion to stay with a demand to arbitrate, particularly in light of paragraph 13.10's requirement that a written notice of arbitration demand be sent to the opposing party together with the name of a designated arbitrator.

We secondarily take note that the record in this case is replete with evidence that Zion has sought to delay and avoid any ultimate adjudication of its now ten-year-old dispute with After Six over entitlement to the escrowed funds. We again reiterate that in lieu of arbitration of this conflict, Zion purportedly preferred to litigate the matter first in the New York and later in the Pennsylvania state courts. This preference notwithstanding, Zion did absolutely nothing to move the dispute toward a final resolution with the result that not one, but two judgments of non-pros were entered against it. This Court can therefore easily conclude that the purposes of the Bankruptcy Code would be significantly violated if the arbitration clause in this case was enforced.

▮ Moreover, the record further indicates that it has only been in response to efforts on the part of After Six to recoup the funds that Zion has filed appeals and petitions for appeal to the Pennsylvania Superior and Supreme Courts and it was only subsequent to After Six's filing of this adversary proceeding that the issue of arbitration was for the first time raised. Although waiver of the right to compel arbitration is not favored and will not be lightly inferred, waiver will be found where there is clear and convincing proof that the party requesting a stay of judicial proceedings has acted in a manner inconsistent with arbitration and that those inconsistent acts have prejudiced the other party. *Hoxworth v. Blinder, Robinson & Co., Inc.,* 980 F.2d 912, 926 (3rd Cir.1992); *Gavlik Construction Co. v. H.F. Campbell Co.,* 526 F.2d 777, 783 (3rd Cir.1975); *Kaliden v. Shearson Lehman Hutton, Inc.,* 789 F.Supp. 179, 182–183 (W.D.Pa.1991). In this regard, it has been held that it is not the inconsistency of a party's actions, but the presence or absence of prejudice which is determinative of the issue of waiver. *Id.* Accordingly, a determination of prejudice relevant to a finding of waiver of the right to arbitrate thus incorporates not only the timeliness or lack thereof of a motion to arbitrate but also the degree to which the party seeking to compel arbitration has contested the merits of its opponents' claims, whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings, the extent of its own non-merits motion practice, its assent to the district court's pretrial orders, and the extent to which both parties have engaged in discovery. *Hoxworth, supra,* at 926–927 citing, *inter alia, Van Ness Townhouses v. Mar*

*Indus. Corp.,* 862 F.2d 754, 759 (9th Cir. 1988); *National Foundation for Cancer Research v. A.G. Edwards & Sons, Inc.,* 821 F.2d 772, 776 (D.C.Cir.1987); *Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156, 1161 (5th Cir.1986). Thus, waiver of the right to seek arbitration has been found where the demand for arbitration came long after suit commenced or the parties had engaged in extensive discovery. *Dancu v. Coopers & Lybrand,* 778 F.Supp. 832, 834 (E.D.Pa.1991) *aff'd* without opinion, 972 F.2d 1330 (3rd Cir.1992); *Miller v. E.W. Smith Co.,* 581 F.Supp. 817, 820 (E.D.Pa.1983); *Hallo v. Flore,* 386 Pa.Super. 178, 562 A.2d 856, 858 (1989).

We are hard-pressed to imagine any case in which the elements of delay (not only in allegedly seeking arbitration but in bringing the lawsuit(s) through the discovery process and to conclusion) and prejudice to an opposing party could be any more blatant or clear. As the Declaration of David Pittinsky, which is attached to After Six's summary judgment motion evinces, twelve years have elapsed since the original Agreement of Sale was executed and the assets of the Koko Rainwear and Harry Fischer corporations were transferred from After Six to Abraham Zion. During that twelve-year period, most of After Six's employees, directors, etc. left the company's employ and the company itself declared bankruptcy. The whereabouts of many of the witnesses whose testimony would be required to arbitrate the underlying dispute are unknown and even if they could be located, it is highly unlikely that they would have much, if any, recollection of the relevant events such as would enable them to testify concerning them. We therefore can find no error whatsoever in the refusal of Bankruptcy Judge Scholl to stay the adversary proceeding before him to allow a decade-old case to be heard before an arbitration panel.

C. *Whether the Bankruptcy Court Erred in Granting Summary Judgment to the Debtor on the Basis of the Statute of Limitations and/or the Doctrine of Laches.*

██ Abraham Zion Corp. secondarily argues that Judge Scholl erred in granting the

debtor's motion for summary judgment on the grounds that Zion's claim was barred by the application of the equitable doctrine of laches. Again, we disagree.

██ It is clear that under Fed.Bankr.R. 7056, the bankruptcy courts are required to follow the same summary judgment standards in adversary proceedings as are used by the district courts in general civil litigation, i.e., those set forth in Fed.R.Civ.P. 56. *See: Bicknell v. Stanley,* 118 B.R. 652, 656 (S.D.Ind.1990). That rule provides, in pertinent part:

> ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Pursuant to this rule, the courts are obligated to look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287, 1292 (D.C.Cir. 1988), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). In making this determination, the court must view all of the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in favor of that party as well. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *U.S. v. Kensington Hospital,* 760 F.Supp. 1120, 1126–1127 (E.D.Pa.1991).

This does not mean, however, that the non-moving party can rest upon the allegations contained in his or her pleading in defense of a motion for summary judgment. To the contrary, Fed.R.Civ.P. 56(e) dictates:

> When a motion for summary judgment is made and supported as provided for in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as other-

**44**

wise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

■ Stated otherwise, while the moving party bears the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element of its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3rd Cir.1990). As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment for the moving party. *In re Ralar Distributors, Inc.,* 4 F.3d 62, 67 (1st Cir.1993).

■ Laches is a failure to assert one's rights in a timely and diligent manner, resulting in prejudice to the opposing party. *Wheeler. v. Nationwide Mutual Insurance Co.,* 749 F.Supp. 660, 662 (E.D.Pa.1990). It therefore acts as a bar to an action when there has been an inexcusable delay in instituting the action and prejudice resulted to the defendant from such delay. *Thomas P. Carney, Inc. v. School District of Philadelphia,* 633 F.Supp. 1273, 1283 (E.D.Pa.1986). Thus, in order to prevail on an assertion of laches, the elements of (1) a delay arising from the petitioner/complainant's failure to exercise due diligence; and (2) prejudice to the responding party resulting from the delay must be proven. *Waddell v. Small Tube Products, Inc.,* 799 F.2d 69, 70 (3rd Cir.1986); *Sprague v. Casey,* 520 Pa. 38, 550 A.2d 184, 187 (1988).

■ The defense of laches necessitates a close scrutiny of the particular facts and a balancing of the respective interests and equities of the parties, as well as of the general public and a delay may be excused upon a showing that the party asserting the

defense substantially contributed to the delay through concealment, misrepresentation, unfilled promises, or any other inequitable conduct. *City of Reading v. Austin,* 816 F.Supp. 351, 367–368 (E.D.Pa.1993), citing *Country Floors, Inc. v. Partnership of Gepner and Ford,* 930 F.2d 1056, 1066 (3rd Cir. 1991) and *Gruca v. United States Steel Corp.,* 495 F.2d 1252, 1259–60 (3rd Cir.1974). The burden of establishing laches falls upon the party asserting the defense if the statute of limitations concerning the action has not yet expired. *Waddell, supra,* at 74; *Wheeler v. Nationwide Mutual Insurance Co., supra,* at 662. In that case, the burden is on the claimant to show why his claim should not be barred by laches. *Tudor Development Group, Inc. v. United States Fidelity & Guaranty Co.,* 768 F.Supp. 493, 496 (M.D.Pa. 1991). Finally, it has been held that in terms of the time element, a lack of due diligence in *prosecuting* one's claim—as well as a lack of due diligence in instituting it—can activate laches. *Beech v. Ragnar Benson, Inc.,* 402 Pa.Super. 449, 587 A.2d 335, 340 (1991).

Applying the foregoing principles to the matter now before us, we first note that the Zion Corp. proffered *no* evidence in rebuttal of that offered by the debtor that it would suffer great prejudice if required to litigate the merits of Zion's claims since it would be difficult if not impossible to locate witnesses and reconstruct events which happened over twelve years ago when the Agreement of Sale was executed. (See Declaration of David H. Pittinsky, Esquire, dated 6/9/93). As a consequence of this failure, this Court can reach no other conclusion but that the appellant has failed to meet its burden of proving the essential elements of its case and that summary judgment is therefore warranted.

■ It similarly appears that the statute of limitations analogous to Zion's claim is that applying to actions for breach of contract which, under Pennsylvania law is four years. *See:* 42 Pa.C.S.A. § 5525.[1] Inasmuch as the statute of limitations in this matter has long since expired, the burden fell

1. Paragraph 14.4 of the said October, 1981 Agreement of Sale provides that the said agreement shall be interpreted and construed in ac-

cordance with the laws of the Commonwealth of Pennsylvania.

upon Zion, as the claimant, to show why its claim should not be barred by laches. Again, Zion has presented nothing in the way of evidentiary support for its claim against After Six nor has it presented any evidence why its claim should not be barred. To the contrary, Zion's sole argument in this regard is that it was *After Six* which bore the responsibility for moving the dispute to the escrow funds to resolution. In making this argument, however, Zion ignores the well-settled principle that where the debtor is the depositor of monies into escrow, legal title to the escrowed funds remains in the debtor until delivery of the fund is effected by the escrow agent. *See: In re Shapiro*, 124 B.R. 974, 980 (Bankr.E.D.Pa.1991) citing, *inter alia, In re Summit Airlines, Inc.*, 94 B.R. 367, 370–371 (Bankr.E.D.Pa.1988) and *Paul v. Kennedy*, 376 Pa. 312, 315, 102 A.2d 158, 159 (1954). We thus find that the onus was not on After Six, but was on Zion to move its claim to the escrow funds to a final resolution in a timely fashion.

Furthermore, even assuming *arguendo* that the statute of limitations had not expired, as discussed above, After Six has shown that a lengthy delay has been occasioned by Zion's failure to both initially institute and to thereafter prosecute its claim to the escrowed funds and that it would be greatly prejudiced if it was allowed to now litigate its claim. Accordingly, we believe that After Six has successfully established that laches are properly applied to now bar Zion's claim in this case. (Prejudice may, for example, be shown if relevant records have disappeared, if a key witness is now deceased or cannot be located, or if the defendant changed his position based on the expectation that plaintiff did not intend to pursue the claim. *Tudor Development Group, supra*, at 496.)

It is therefore for all of the above reasons that we find no error in the well-reasoned decision of the Bankruptcy Court and that the appeal of Zion Corp. is hereby denied in accordance with the attached order.

### ORDER

AND NOW, this 11th day of April, 1994, upon consideration of the Appeal of the Abraham Zion Corporation from the Orders issued by the Bankruptcy Court on June 23, 1993 and July 7, 1993, it is hereby ORDERED that the Appeal is DENIED for the reasons set forth in the foregoing Memorandum.