**In the Matter of Arthur M. HALVAJIAN, Debtor.**

**Arthur M. HALVAJIAN, Appellant,**

v.

**The BANK OF NEW YORK, et al., Appellees.**

**No. CIV. A. 97–2827.**

United States District Court, D. New Jersey.

Jan. 8, 1998.

---

**504**

Mr. Arthur M. Halvajian, Saddle River, NJ, Appellee Pro Se.

John P. DiIorio, Shapiro & Croland, Hackensack, NJ, for Appellee Bank of New York.

Fran B. Steele, United States Department of Justice, Office of the United States Trustee, Newark, NJ, United States Trustee.

Joseph L. Steinberg, Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, NJ, for Appellee ALI.

### *OPINION*

WOLIN, District Judge.

The current case is before the Court on appeal by debtor *pro se* Arthur M. Halvajian from a March 3, 1997 Bankruptcy Court Order ("the Order") granting relief under 11 U.S.C. § 1112(b).[1] At defendant creditor Bank of New York's ("BNY") motion, Halvajian's case was converted under Chapter 11 to Chapter 7 due to his inability to present a confirmable reorganization plan after 22 months in Chapter 11. In addition, Halvajian appealed the Order's provision relieving defendant creditor ALI, Inc. ("ALI") of its obligations under a January 1997 court ap-

proved Consent Order entered into with Halvajian. Defendant creditors BNY and ALI oppose the appeal. The Court has considered the appeal under Federal Rule of Civil Procedure 78. For the reasons stated herein, Halvajian's appeal will be denied and the Order affirmed.

### BACKGROUND

Halvajian both resides and maintains a business office in New Jersey as a commercial real estate developer of shopping centers and other commercial industrial properties. (*See* 10/14/97 Opinion at 2 (citation omitted).)[2] As a general partner in eight real estate partnerships, including Mall at IV Associates ("Mall at IV"), Mall at One Group, L.P. ("Group") and Hal Properties, Halvajian's income is primarily generated from management fees and commissions earned in connection with managing certain aspects of the partnerships and from those partnerships' distributions. (*See id.* (citation omitted); BNY Opp. at 8 (citation omitted).) Mall at IV owns a retail shopping mall in Paramus, New Jersey of over 200,000 square feet. (*See* BNY Opp. at 8.) That property is subject to a mortgage in favor of ALI. (*See id.*) The mortgage ALI held is in default and ALI holds a deed in lieu of foreclosure in escrow. (*See id.* (citation omitted).) Louis Pashman was appointed and is acting as the Receiver of Group pursuant to a New Jersey Superior Court order entered in litigation between Halvajian and the other partners of Group, Lawrence Kohan, and Robert Hillman. (*See id.* at 8–9 (citation omitted).) Group owns a shopping center in Philadelphia, Pennsylvania subject to a first mortgage in favor of BNY which matured on February 1, 1997. (*See* 10/14/97 Opinion at 2 (citation omitted).) Hal Properties owns an industrial building in Totowa, New Jersey subject to a mortgage in favor of BNY which matured on February 1, 1992. (*See id.* (citation omitted).)

---

1. Section 1112(b), in part, provides: " ... on request of a party in interest or the United States trustee or bankruptcy administrator, and after notice and hearing, the court may convert a case under this chapter to a case under chapter 7 of this title ... for cause, including .... "

2. In a previous action separate from the current case, this Court issued an Unpublished Opinion, Civ. A. No. 97–3793, on October 14, 1997 denying Halvajian's motion for leave to appeal the Bankruptcy Court's interlocutory order denying debtor's motion for an order compelling Richard Pouch (BNY Vice President) and/or BNY to produce documents.

After filing a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code ("the Code"), Halvajian, as a debtor-in-possession, continued to manage his assets and operate his business pursuant to sections 1107 and 1108 of the Code. (*See* BNY Opp. at 9 (citation omitted).) Halvajian relinquished such control upon entry of the March 3, 1997 Order at issue in the current case designating Robert B. Wasserman as the Chapter 7 Trustee ("the Trustee"). (*See id.* at 9 (citation omitted).)

On or about May 15, 1995, all creditors listed in Halvajian's petition for bankruptcy were served a Notice of Commencement of case under Chapter 11 of the Bankruptcy Code ("the Notice") by the Clerk of the United States Bankruptcy Court. (*See id.* at 10 (citation omitted).) September 11, 1995 was designated as the last date for creditors to file Proofs of Claim. (*See id.* (citation omitted).)

BNY's Proof of Claim was filed in the amount of $9,389,015.62. (*See id.* (citation omitted).) BNY's claim is generally comprised of: "(a) unsecured claims arising out of Halvajian's status as a general partner in partnerships that are obligated to BNY; (b) a secured claim of over $2,000,000, evidenced by a Final Judgment of Foreclosure, with regard to" 3 Cameron Road, Saddle River, New Jersey (the "Residence") "for which BNY has not received payments for over four years;" and (c) Partnership Interests securing a claim of over $1,000,000. (*See id.* (citation omitted).) ALI filed a Proof of Claim in the amount of $14,794,987.99 arising out of Halvajian's general partner status and as guarantor of the obligations of Mall at IV. (*See id.* (citation omitted).) Lastly, Kohan and Hillman filed their $7,000,000 Proof of Claim.[3] (*See id.* (citation omitted).)

On April 18, 1996, Halvajian filed his initial disclosure statement and plan of reorganization in an effort to reorganize his business. (*See id.* at 11 (citation omitted).) Soon thereafter, some partners of Group, joined by BNY, filed a motion to convert the case pursuant to section 1112(b) of the Code to a Chapter 7 case. (*See id.*) The Bankruptcy Court initially denied the motion, deeming conversion to be premature. (*See* 10/14/97 Opinion at 3 n .3.) In an October 30, 1996 Order, Halvajian was given four additional months to confirm a reorganization plan or be faced with a hearing to convert his case to Chapter 7. (*See id.*)

Halvajian amended his plan for reorganization several times, allegedly "to incorporate, among other things, the Court's decision in the BNY Adversary Proceeding, the terms of replacement financing from Kennedy Funding, Inc. (later replaced with financing by Dover House Capital, L.L.P.), the terms of a settlement agreement among [Halvajian] and the limited partners of the Mall at One, Robert Hillman and Lawrence Kohan, and to incorporate changes requested by BNY and other creditors." (Halvajian Cert. at 4.) On November 6, 1996, Halvajian ultimately filed a Fourth Amended Plan and Disclosure Statement pursuant to Section 1127 of the Code (the "Plan" and the "Disclosure Statement"). (*See* BNY Opp. at 12 (citation omitted).) The Bankruptcy Court approved the Disclosure Statement on November 20, 1996.

Halvajian maintains that the 22 months in Chapter 11 were utilized in "good faith," *i.e.*, without unreasonable delay. (Halvajian Cert. at 17.) Further, Halvajian notes that "public policy clearly prefers rehabilitation to liquidation" (*id.* at 23), although recognizing that "impractical schemes for resurrection" will not be tolerated. (*Id.*) Nevertheless, Halvajian contends that "[t]his Chapter 11 case does not have the procrastination history condemned by courts." (*Id.* at 31.) Indeed, he alleges that BNY "is solely driven by greed, they have put aside all good business sense and have become compulsive in their drive for ill gained profit and in their effort to destroy the Debtor at all costs regardless of the truth in the matter." (*Id.* at 15.)

In response, BNY contends that Halvajian failed to save money or to apply for authority to sell his assets during the case. (*See* BNY Opp. at 12–13.) Moreover, the Plan did not

---

**3.** The Court notes that various other claims were also asserted against Halvajian. (*See* BNY Br. at 10–11 (citation omitted).)

contain provisions for the sale of any assets. (*See id.* at 13 (citation omitted).) Rather, the Plan provided that proceeds received from proposed refinancings of properties owned by Group, Hal Properties and Hal Associates (another partnership in which Halvajian owns an interest) would fund the Plan exclusively. (*See id.* (citation omitted).) Dover House Capital, LCC's October 15, 1996 letters issued to Halvajian (the "Dover Letters") set forth the terms by which the proposed refinancings were to be accomplished. (*See id.* (citation omitted).) The Plan further provided that the refinancing proceeds, if obtained, were to be used to satisfy BNY's existing mortgage liens regarding the partnership properties to be refinanced. (*See id.* (citation omitted).) The remainder was to be used to pay Halvajian's obligations under the Plan, including BNY's secured claims of more than $3,000,000. (*See id.* (citation omitted).) BNY maintains that Halvajian's available financing was insufficient to fund obligations under the Plan. (*See* Halvajian Cert. at 30.) Halvajian contests this allegation. (*See id.*)

Halvajian, as provided by each of the Dover Letters, was required to submit extensive information relating to the operation and condition of the properties for which refinancing was sought. (*See* BNY Opp. at 13 (citation omitted).) Such information included rent rolls, tenant estoppel certificates, financial statements, appraisals, and environmental reports. (*See id.* (citation omitted).) Moreover, in order to close the loans, each of the Dover Letters contained provisions setting forth conditions precedent—including a "maximum loan to value ratio and a minimum debt service coverage ratio"—which had to be met according to the satisfaction of Dover and its counsel. (*See id.* at 14 (citation omitted).) Yet, as late as February 19, 1997, Halvajian testified that not all of the items required to be submitted to Dover were provided and Dover had not finished its underwriting criteria. (*See id.* (citation omitted).) In fact, Halvajian, as of August 29, 1997, acknowledged in his pleadings that additional items still needed to be submitted for Dover's consideration. (*See id.* (citing Halvajian Reconsideration Cert. at 7–8).) Lastly, "the issuance of a 'closing letter' in accordance with the Dover Letters is the only indicia that Dover is ready, willing and able to close, and Dover, in its sole discretion, may elect to cancel the Dover Letters." (*Id.* (citation omitted).)

The Dover Letters were obtained in October of 1996. (*See id.*) Shortly thereafter, on or about January 7, 1997, Halvajian and ALI filed a "Joint Application for entry of a Consent Order Fixing the Amount of [ALI]'s Claim For Voting Purposes Only And To Approve A Settlement Between Debtor And [ALI]" in an effort to gain creditor acceptance of the Plan (the "ALI Settlement"). (*Id.*) In part, the ALI Settlement provided for Metro Commercial realty to be retained by Mall at IV as the exclusive rental agent/professional property manager for the property Mall at IV owns. (*See id.* at 15.) Also, the ALI Settlement contained provisions for ALI to receive interest-only payments of $52,000 per month from October 1996 through December 1997. (*Id.*) On December 31, 1997, ALI would accept $10.5 million in full satisfaction of all of Mall at IV's indebtedness to ALI, assuming that there were no defaults. (*See id.*) Further, Halvajian would be entitled to receive $10,000 per month from Mall at IV, pursuant to the terms of the ALI Settlement, "provided sufficient cash flow [was] available after payment of ordinary and customary expenses and the interest only debt service payments of $52,000 per month to [ALI]." (*Id.* (citation omitted).) Despite BNY and creditor Daniel Geensburg's objections, the Bankruptcy Court entered a January 23, 1997 Order approving the ALI Settlement and estimating ALI's claim at $3,000,000 pursuant to section 502(c) of the Code (the "ALI Consent Order"). (*See id.* (citation omitted).) BNY's appeal of the entry of the ALI Consent Order was later withdrawn after the ALI Consent Order was vacated. *See infra* text pp. 507–508.

A provision in the Order at issue in the current case granted ALI's motion to vacate portions of the January 23, 1997 Consent Order which approved, as set forth *supra*, a settlement of Halvajian's motion to reduce the claim and established the amount of ALI's claim for voting purposes only. (*See*

BNY Opp. at 2 n.\*.) Halvajian appeals that portion of the Order in the current case as to ALI, arguing that the Bankruptcy Court "erred in permitting ALI to recant and disavow their vote." (ALI 8/29/97 Letter Opp. at 1. (quotation omitted).) ALI maintains that because that holding was not a part of the Order appealed before this Court, the issue is not before this Court. (*See id.*) At the March 3, 1997 hearing which resulted in entry of the Order at issue, the Bankruptcy Court did rule that ALI was "well within their rights to seek to be relieved of the terms of the consent order [and] to be permitted to file a rejecting ballot, and to, in essence, withdraw their support for the plan of reorganization." (*Id.* at 2 (quotation omitted).) ALI argues that that ruling was rendered moot later in the hearing when the Bankruptcy Court decided to convert Halvajian's case. (*See id.*)

Halvajian also claims an inability to propose a confirmable plan of reorganization during the 22 months his case was in Chapter 11 due, in part, to ALI's request to be relieved of its obligations under the January 1997 Consent Order.[4] (*See id.*) In opposing Halvajian's appeal currently before the Court, ALI contends that Halvajian's argument is meritless given that (1) Halvajian began a "systematic repudiation" of his obligations under the Letter Agreement promptly after the Letter Agreement was executed and the Consent Order was entered; and (2) Halvajian ultimately sent a letter to ALI admitting that he lacked the financing to fund the plan for reorganization and that his plan was "doomed to fail." (*Id.*)

A March 13, 1997 confirmation hearing regarding the Plan was scheduled. (*See* BNY Opp. at 16.) On February 24, 1997, BNY filed a lengthy and detailed objection, certification, and brief in opposition to the Plan's confirmation. (*See id.*) BNY argued, in part, that the Plan: (1) was not "feasible" pursuant to section 1129(a) of the Code; (2) was not equitable and fair pursuant to section 1129(b) of the Code in treating BNY's claims; and (3) violated section 1122 of the

Code in impermissibly classifying claims. (*See id.*) In short, BNY sought conversion of the current case to Chapter 7 when it filed the August 1996 motion. (*See* 3/3/97 Transcript at 37; *supra* text p. 505.)

Around the time BNY filed the above opposition to the Plan's confirmation, ALI filed an application for entry of an order shortening time regarding ALI's motion for entry of an order specifically seeking to be relieved of its obligation under the January 1997 court approved ALI Consent Order. (*See id.* at 22–23 .) On February 25, 1997, the Bankruptcy Court entered an Order shortening the time for a hearing on ALI's motion. (*See* BNY Opp. at 16.) Subsequently, the March 3, 1997 hearing entertained ALI's motion and the relief requested was granted on that day. (*See id.* at 36.) Specifically, the Bankruptcy Court found that grounds existed to vacate the ALI Consent Order because the facts in the record demonstrated that Halvajian sought to modify the ALI Settlement's terms. (*See id.* at 17 (citation omitted).) Halvajian emphasizes that ALI voted in favor of accepting his Plan. (*See* Halvajian Cert. at 41.) Next, after considering BNY's arguments and the record in the proceedings, the Bankruptcy Court converted Halvajian's case to Chapter 7 due to his inability to present a confirmable reorganization plan after 22 months in Chapter 11. (*See* 3/3/97 Transcript at 72.)

Halvajian then filed a motion for reconsideration of the Order with the Bankruptcy Court on or about March 13, 1997 (the "Reconsideration Motion"). (*See* BNY Opp. at 18 (citation omitted).) Halvajian argued, in part, that the Bankruptcy Court erred in allowing the Plan confirmation hearing date to be changed without also changing the conversion hearing's date. (*See* Halvajian Cert. at 65.) Both BNY and ALI opposed the Reconsideration Motion. (*See* BNY Opp. at 18 (citation omitted).) After conducting an April 9, 1997 hearing, the Bankruptcy Court found that Halvajian had failed to present anything which materially altered

---

**4.** The terms of a Letter Agreement entered into by ALI and Halvajian in December of 1996 were

incorporated into the Consent Order. (*See id.*)

the Bankruptcy Court's previous findings. (*See id.* (citation omitted).)

Thereafter, Halvajian filed a Notice of Appeal from the Order on April 21, 1997. (*See id.* (citation omitted).) Halvajian's motion for a stay pending appeal of the Order was denied; the Bankruptcy Court found "a lack of likelihood that [Halvajian] will prevail on the merits of the appeal and a lack of irreparable injury to [Halvajian] unless a stay is granted." (*Id.*) The case currently before the Court ensued.

## DISCUSSION

### Jurisdiction

■■■ The threshold issue in the current case is whether the Court should hear this appeal. As set forth in this Court's October 14, 1997 Unpublished Opinion, "the United States district courts have mandatory jurisdiction to hear appeals from final orders of bankruptcy judges." *See* 28 U.S.C. § 158(a)(1993).[5] If the order is interlocutory, *i.e.*, provisional, the district court has discretion to grant or deny leave to appeal. *See id.; Century Glove, Inc. v. First American Bank,* 860 F.2d 94, 97 (3d Cir.1988)(noting that a district court may review both final and interlocutory orders of the bankruptcy court).

Determining whether an order is final or interlocutory is not a fully settled area of the law. In adversarial proceedings, orders which are related but have a separate existence from the main case, are deemed final if the litigation is ended on the merits by the order and the court is left only with "ministerial acts" relating to executing the judgment. Subcommittee on Case Management of the Committee on the Administration of the Bankruptcy System of the Judicial Conference of the United States, *et al., Case Management Manual for United States Bankruptcy Judges* 347 (1995)("Manual"); *see, e.g., Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 373, 101 S.Ct. 669, 672–73, 66 L.Ed.2d 571 (1981); *Catlin v. United States,*

324 U.S. 229, 233, 65 S.Ct. 631, 633–34, 89 L.Ed. 911 (1945); *In re Amatex Corp.,* 755 F.2d 1034, 1039 (3d Cir.1985). Under one particularly expansive decision in the Third Circuit, even if the bankruptcy court's order does not qualify as a final order, the district court has the power to entertain this appeal as an interlocutory appeal if it implicates "a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal . . . may materially advance the ultimate termination of the litigation." *In re Bertoli,* 58 B.R. 992, 995 (D.N.J.1986), *aff'd,* 812 F.2d 136 (3d Cir. 1987); *see also Walsh Trucking v. Insurance Co. of North America,* 838 F.2d 698, 701 (3d Cir.1988) (declaring that courts faced with bankruptcy appeals should take a pragmatic approach to the finality requirement, and treat as final, orders that might be considered interlocutory in other contexts).

### Standard of Review

■■■ On appeal, a federal court may set aside a bankruptcy court's findings of fact only if clearly erroneous. *See, e.g., Brennan v. Poritz,* 198 B.R. 445, 448 (D.N.J.1996); *In re Sharon Steel Corp.,* 871 F.2d 1217 (3d Cir.1989); *GE Credit Corp. v. Nardulli & Sons, Inc.,* 836 F.2d 184 (3d Cir.1988). The fact that a reviewing court could have decided the matter differently does not render a finding of fact clearly erroneous. *See* Bank. R. 8013; *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). In contrast, a bankruptcy court's legal conclusions or questions of law are subjected to plenary review. *See, e.g., In re Modular Structures, Inc.,* 27 F.3d 72, 76 (3d Cir.1994) (citation omitted); *J.P. Fyfe, Inc. v. Bradco Supply Corp.,* 891 F.2d 66, 69 (3d Cir.1989).

■■■ When reviewing a matter committed to the bankruptcy court's discretion, the district court may only determine whether the bankruptcy court did or did not abuse its discretion. *See* Bank. R. 8013; *see also In re*

---

**5.** In part, section 158 provides:
(a) The district courts of the United States shall have jurisdiction to hear appeals
(1) from final judgments, orders, and decrees;

(2) from interlocutory orders and decrees under section 1121(d) of title 11 . . .; and
(3) with leave of the court, from other interlocutory orders and decrees . . . .

*Vertientes, Ltd.,* 845 F.2d 57, 59 (3d Cir. 1988). Further, this Court is limited to review of the evidence before the Bankruptcy Court and which was made a part of the record at the time the March 3, 1997 decision was rendered. *See, e.g., Mellon Bank, N.A. v. Delaware & Hudson Ry. Co.,* 129 B.R. 388, 396 (D.Del.1991) (citing *In re Neis,* 723 F.2d 584, 589–90 (7th Cir.1983) (holding that district court should not ordinarily engage in additional factfinding on appellate review of Bankruptcy Court order)). Accordingly, in deciding the current appeal, this Court will disregard any pleadings not in the record before the Bankruptcy Court, in addition to any facts not supported by citations to the record.

## The Bankruptcy Court's Order Constitutes a "Final Order" for Appellate Jurisdiction Purposes

BNY and ALI [6] contend that the Order at issue is interlocutory rather than final. (*See* BNY Opp. at 6, 19–20.) As set forth *supra* and in this Court's Unpublished Opinion of October 14, 1997, the Code "makes a distinction between both final and interlocutory orders and the district court's jurisdiction over each type of order." (10/14/97 Opinion at 5–6.) As such, BNY and ALI cite to persuasive authority to argue that the Court should not grant Halvajian leave to appeal. (*See* BNY Opp. at 19 (citing to *In re Fraidin,* 188 B.R. 529, 532 (D.Md.1995) (holding that Bankruptcy Court's order granting conversion of Chapter 11 case to Chapter 7 was not "final judgment" within the meaning of Rule 8001, and, thus, the district court lacked subject matter jurisdiction to hear the appeal), *aff'd,* 110 F.3d 59 (4th Cir.1997).)) Halvajian does not appear to frame this appeal as one of right. He asserts that in the event that the order below is deemed interlocutory, "the issues herein are of 'exceptional circumstances and justify a departure of the basic policy of postponing appellate review until after the entry of a final judgment.'" (Halvajian Response to BNY at 2 (citation omitted)).

The Court must decide whether the Order is final and appealable as of right, and if the order at issue is not final, whether leave should be granted for an interlocutory appeal. The Court deems the March 3, 1997 Order to be final.

■■ The Bankruptcy Reform Act of 1978 brought bankruptcy appeals procedure closer to the traditional approach of finality in non-bankruptcy litigation. As a general rule, a final judgment under 28 U.S.C. § 1291 is "one which ends the litigation ... and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). As discussed in this Court's Unpublished Opinion of October 14, 1997, the concept of finality in the bankruptcy context is somewhat broader than in ordinary civil litigation. (*See* 10/14/97 Opinion at 6.) Strict application of the traditional standard of finality to bankruptcy cases—denying appeals until the case is entirely closed, distribution is made to creditors, and other rights are fixed—has been recognized by a number of courts as disallowing for a meaningful appellate review. (*See id.* at 6–7 (citation omitted).) Thereby, a more flexible and pragmatic approach to the concept of finality in bankruptcy cases has been adopted by these courts. *See id.* at 7 (citation omitted); *see, e.g., After Six, Inc. v. Abraham Zion Corp.,* 167 B.R. 35, 40 (E.D.Pa.1994)("[I]n bankruptcy proceedings, it is generally the particular adversary proceeding or controversy that the court must have finally resolved, rather than the entire bankruptcy for a decision to be final."), *aff'd,* 1994 WL 125219 (E.D.Pa. Apr. 12, 1994); *In re Oglesby,* 158 B.R. 602, 604 (E.D.Pa.1993). "In other words, an order is deemed final when a discrete dispute within the larger case is conclusively determined; the order need not dispose of the entire bankruptcy proceeding." (10/14/97 Opinion at 7.)

■■ The Third Circuit does not appear to have addressed the issue of appealability of an order converting a Chapter 11 case to a Chapter 7 case. In a case involving an ap-

---

**6.** With regard to all issues regarding conversion that Halvajian raises in the appeal currently before the Court, "ALI joins in the arguments advanced by [BNY]." (ALI 8/29/97 Letter Opp. at 1.)

peal taken from a bankruptcy court order denying a creditor's motion to convert the case from Chapter 11 to Chapter 7, the district court held that the order was not appealable. *See In re Darby Supermarket, Inc.*, 94 B.R. 54 (E.D.Pa.1988). In determining the appealability of a bankruptcy court's order, the Third Circuit considered "the impact of the matter on the assets of the bankruptcy estate, the preclusive effect of a decision on the merits [on subsequent litigation], and whether the interests of judicial economy would be furthered." *Id.* (quoting *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 104 (3d Cir.1988) (citing *In re Meyertech*, 831 F.2d 410, 414 (3d Cir.1987)), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988)). The necessity for additional factfinding on remand is another consideration recognized by this Circuit. *See Wheeling–Pittsburgh Steel Corp. v. McCune*, 836 F.2d 153, 158 (3d Cir.1987) (citing *In re Meyertech*, 831 F.2d at 414).

■ Applying these considerations to the current case results in an outcome different from, but not contrary to, the district court's holding in *In re Darby Supermarket.* That case is distinguished from the current case in that *Darby* involved a denial of a creditor's motion to convert the Chapter 11 case to Chapter 7 before the debtor even filed a reorganization plan. *See* 94 B.R. at 55. In the current case, application of the Third Circuit factors support review of the Bankruptcy Court's Order.

As conversion is necessarily a question of fact, the necessity for additional factfinding on remand may be required. However, a bankruptcy case in Chapter 11 is essentially a case in reorganization; the debtor reorganizes the manner in which it has to pay its debts and requests that its creditor approve the reorganization. *See* Federal Judicial Center Series Introducing the Federal Courts: Bankruptcy Courts: Part III at 4 (February 1994). In marked contrast, converting a case from Chapter 11 to Chapter 7 signifies liquidation or the taking possession and selling of a debtor's assets by a

case trustee to raise cash for creditors; upon payment of all assets to creditors, the matter is closed and the business no longer exists. *See* Federal Judicial Center Series Introducing the Federal Courts: Bankruptcy Courts: Part II at 4 (February 1994). In effect, conversion from Chapter 11 to 7 changes the very essence of a case in bankruptcy. The Order caused Halvajian to lose debtor-in-possession status; his control over the case was relinquished and transferred to the Trustee. Accordingly, the Order at issue impacts irrevocably on the assets of the bankruptcy estate. Moreover, the resulting liquidation of the bankruptcy estate in Chapter 7 will have a preclusive effect on subsequent litigation; Halvajian's business or assets would no longer exist for any future suit.[7] Indeed, the conversion Order poses a threat of irrevocable harm to any interests of future creditors. Lastly, in determining whether the interests of judicial economy would be furthered, "[i]t would seem extraordinarily impractical to await the outcome of this litigation on the merits before determining "...". [the appropriateness of the conversion] issue ." *In re Livingston & Co., Inc. (Gibbons v. Stemcor USA, Inc.)*, 186 B.R. 841, 849–50 (D.N.J. 1995) (involving appeal of bankruptcy court's order denying motion to dismiss and/or for summary judgment in adversary proceeding; district court was permitted to hear appeal of the order). Accordingly, immediate appeal of the Order converting the current case to Chapter 7 is appropriate given that the impact of conversion on the ultimate resolution of the litigation in the current case cannot be denied; conversion conclusively determined a discrete issue—control over the bankruptcy estate's assets. Thus, in light of the liberal interpretation of finality often applied to bankruptcy appeals, the March 3, 1997 Order appealed by Halvajian is deemed a final order under 28 U.S.C. § 158(d).

## The Bankruptcy Court Did Not Abuse its Discretion

■ As set forth *supra*, this Court applies a clearly erroneous standard of review

---

7. While it is not dispositive, the Court notes that the assets of the bankruptcy estate have been sold. *See* Order Denying Stay Pending Appeal, entered November 13, 1997 and amended on November 25, 1997, Case No. 97–2827.

to the Bankruptcy Court's findings of fact and plenary review to the Bankruptcy Court's legal conclusions. *See In re Gain Electronics,* Civ. A. No. 89–5282, 1990 WL 43891, at \*1 (D.N.J. April 5, 1990); *In re Sharon Steel Corp.,* 871 F.2d at 1222–23; *In re Morrissey,* 717 F.2d 100, 104 (3d Cir.1983). Findings of fact are clearly erroneous when the reviewing court is left with a firm and definite conviction that a mistake has been committed. *See United States v. United States Gypsum Co.,* 333 U.S. 364, 365, 68 S.Ct. 525, 527, 92 L.Ed. 746, *reh'g denied,* 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147 (1948). Whether conversion of a case from Chapter 11 to Chapter 7 is proper involves a question of fact. *See, e.g., In re Sharon Steel Corp.,* 871 F.2d at 1225–26 (affirming appointment of a Chapter 11 trustee under 11 U.S.C. § 1104(a) and rejecting the plenary review standard; "over appointment of a trustee ... we join the Fourth Circuit in adopting an abuse of discretion standard.").

Section 1112(b) instructs that the court may convert a case under Chapter 11 to Chapter 7; such a determination "for cause" appears to be within the court's discretion.[8] 11 U.S.C. § 1112(b). Subsection (b) also creates a flexible standard, instructing the court to "convert a case under this chapter to a case under Chapter 7 of this title or [the court] may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate." 11 U.S.C. § 1112(b)(Supp.1997); *see In re Sharon Steel Corp.,* 871 F.2d at 1226. In light of the fact that subsection (b) envisions a flexible standard, "an abuse of discretion standard offers the most appropriate type of review for this subsection as well." 871 F.2d at 1226 (discussing 11 U.S.C. § 1104, which contains similar discretionary language). An abuse of discretion standard "best comports with the language, structure, and purpose" of section 1112(b). *Id.* (discussing § 1104(a)).

For the foregoing reasons discussed, this Court deems that § 1112(b) determinations must be made on a case-by-case basis. Subsection (b) provides that the bankruptcy court may convert a case for "cause," which the statute defines, in part, to include "(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; (2) inability to effectuate a plan; and (3) unreasonable delay by the debtor that is prejudicial to creditors." 11 U.S.C. § 1112(b)(1)-(3). To determine whether the Bankruptcy Court abused its discretion in converting the current action, this Court turns to the transcript of the March 3, 1997 hearing to convert the case to Chapter 7.

At the March 3, 1997 hearing, the Bankruptcy Court heard BNY's motion to convert. The Bankruptcy Court had fixed the motion to convert by entry of an October 30, 1996 order. *See supra* text p. 505. In that October order, the Bankruptcy Court directed that if no confirmation on Halvajian's Plan occurred by February 14, 1997, a motion to convert was scheduled on February 27 by the Bankruptcy Court at BNY's request. (*See* 3/3/97 Transcript at 8–9.) Halvajian asked and was granted an extension on time until the March 13 confirmation hearing. (*See id.* at 9.) Prior to the confirmation hearing, Halvajian informed ALI that the Plan would fail and that ALI could not be assured that Chapter 11 would be confirmed because Halvajian lacked the financing necessary to fund the Plan. (*See id.* at 10.)

Although recognizing many of the issues raised in the conversion hearing to be confirmation issues (*see id.* at 68), the Bankruptcy Court nevertheless decided that:

> unfortunately, there is ample grounds to convert this case.... In particular, I find that this case is not likely to undergo successful reorganization ... for principally the fact that ... it is a case that is 22 months old.... Typically, in a 22-month life-span of a case such as this, in anticipation of a confirmation that's just days away, a Debtor has at least settled some of the outstanding litigation or claims against it. This Court is presently looking at a Debtor going to confirmation with not one agreement, not one. It is simply impossi-

---

**8.** Section 1112(c) limits the court's ability to convert a case, but is not applicable to the current action.

ble on the kind of plan proposed by this Debtor, and, in fact, particularly in light of the fact that this Court has voided the settlement with [ALI], the Court believes that any confirmation plan proposed by the Debtor in its fourth amended plan and disclosure statement is impossible. The dollars just simply aren't going to be there.

(*Id.* at 68–69.) Assuming that the monies will be available to confirm the case, the Bankruptcy Court agreed with BNY's assessment that the funds would, nevertheless, be insufficient. (*See id.* at 69.)

> Even more importantly, I think the Debtor's projected income has considerable gaps in it. The Debtor projects income to himself from various partnerships that I think are just flatly unrealistic.... There just simply isn't enough potential here for this Court to expect that if I gave the Debtor a reprieve and he ran back and attempted to work something out with [ALI] that it could occur.

(*Id.* at 70.) Ultimately, the Bankruptcy Court determined that "the Debtor just simply doesn't have it. He doesn't have any kind of a—any kind of a capacity, financially, to go back and make new offers to anyone." (*Id.* at 71.) The Bankruptcy Court noted that "[w]hat I have here in front of me is a case that imploded. Every prospect the Debtor had for agreement or workout has simply vanished. After 22 months, this Court is not inclined to give the Debtor any further opportunity. There's been more than ample opportunity granted to the Debtor, and accordingly, the Court will enter an order converting the case." (*Id.* at 72.)

As for ALI's motion to be relieved of its obligations under the January 23 ALI Consent Order, ALI sought to prepare and file a new ballot, intending to change its vote and vote against the Plan. The Bankruptcy Court entertained ALI's motion despite Hal-

vajian's counsel's request for a two-day adjournment.[9]

The Bankruptcy Court stated:

> "I must tell you, if this was a different circumstance, I would ... give Mr. Halvajian a chance to perform under the consent order, but let's roll the clock back a little bit .... This was something that was in negotiation for some time .... It was brought to the Court .... There was considerable argument back and forth among the parties. Never once, never once, in that whole discussion, was there ever any inkling that surfaced that Mr. Halvajian had any concern about the terms or performance under the consent order .... The bottom line is post agreement this were at least two significant efforts to renegotiate the terms, and essentially, by the time the motion papers were filed, ALI threw up his hands and said, we're through negotiating. And this is particularly of concern to the Court .... I think a fair reading of [Halvajian's February 13 letter] is a recognition by Mr. Halvajian that, as proposed, I am going to say unable to perform under the agreement."

(Id. at 34–35.) Although recognizing that Halvajian was out-of-state, the Bankruptcy Court noted that

> there's no contrary proposal here. In the face of this motion, nobody ran and negotiated a different result, or said I'll give you, I will sign the agreement, I take back everything I said, I think we can make a deal work. It didn't happen. Even if it did, I would tell you that the Court would be skeptical of the ability to go forward and perform in light of the history leading up to the entry of that first order or the consent order, and the developments subsequently.

(Id. at 35–36.) Accordingly, the Bankruptcy Court relieved ALI of its obligations under

---

9. Halvajian's attorney argued that she needed more time to prepare, that primary counsel was out-of-town, and that Halvajian was not in the state. (*See* 3/3/97 Transcript at 4.) Confirmation had been set for March 13, 1997. (*See id.* at 5.) The Bankruptcy Court reasoned that "it is getting bleaker and bleaker, and I think that there is enough concern here on the Court's part, as well as the parts of the litigants here, that I am not

inclined to adjourn this. I intend to hear the motion." (*Id.* at 11.) Further, "... I regret [Halvajian's primary counsel Mr. Leyva's] lack of presence here, but at the same time I don't think the merits of the matter turns or falls on whether Mr. Leyva is present or Mr. Halvajian is present. These issues are long in the making, and I intend to go forward this afternoon ...." (*Id.* at 18.)

the ALI Consent Order, permitting ALI to file a rejecting ballot, thus allowing ALI to withdraw support for the Plan. (*Id.* 36.)

 BNY argues that Halvajian's Plan was not feasible and, further, was not supported by any major creditor constituency. (*See* BNY Response at 28.) BNY's analysis comports with grounds set forth by the Bankruptcy Court as establishing cause to convert the current action. (*See id.* at 24–32; *supra* text.) Halvajian, in essence, argues that the Bankruptcy Court did not have cause to convert the current case. In his pleadings, particularly in his "response to [BNY]'s response," Halvajian addresses the first three factors establishing cause as set forth in § 1112(b), *see supra* text p. 511, and then proceeds to refute any basis for a cause for conversion. (Halvajian Reply to BNY at 7–12.) Specifically, Halvajian argues: (1) gains in net equity and a reasonable likelihood of rehabilitation (*see id.* at 7–8); (2) that the proposed plan is "adequate, feasible, and practical" as only 5 days remained from confirmation hearings where he could demonstrate the ability to reorganize (*id.* at 10); and (3) the delay was neither unreasonable or prejudicial given that § 1112(b)(3) sets forth no time limits and each matter must be determined on a case-by-case basis. (*See id.* at 11.) In short, each party presents differing facts to argue for an opposite conclusion as to whether there existed a valid cause to convert.

This Court's review of the March 3, 1997 Order is limited to a determination of whether or not the Bankruptcy Court abused its discretion. Such review is also limited to the evidence made part of the record at the March 3, 1997 decision and before the Bankruptcy Court. *See supra* text at pp. 508–509. The factual findings upon which the Bankruptcy Court found cause to convert the current case to Chapter 7 pursuant to § 1112(b) were not clearly erroneous. The Court notes that the factors listed in the statute, upon which cause to convert may be established, are not exhaustive. *See supra* text p. 511. Moreover, the Court again emphasizes that under § 1112(b), the Bankruptcy Court has broad discretion in determining whether

cause exists to dismiss or convert a case. Accordingly, the Court cannot find that the Bankruptcy Court erred in converting this case. The Bankruptcy Court was fully familiar with the facts and continuing events underlying the current case, and its conversion determination was well-reasoned, thoughtful, and considered all arguments presented. Thus, because the Bankruptcy Court did not err in its determination that conversion was warranted, Halvajian's claim is without merit. Under these circumstances, the Court finds that the Bankruptcy Court was correct and not clearly erroneous in this determination.

The Court reiterates that the Bankruptcy Court did not abuse its discretion. This Court possesses a firm and definite conviction that the Bankruptcy Court did not commit a mistake. Under 11 U.S.C. § 1112(b)'s required discretionary determination of cause and the embodied flexible standard, the Bankruptcy Court acted within its discretion in concluding that the events preceding the conversion hearing signaled the need to convert the current case and to appoint a trustee. Too many major problems remained—the Plan was deemed not feasible due to a lack of financing, and even if funds were obtained, such funds were deemed insufficient, in addition to the absence of any creditor acceptance of the Plan. The Bankruptcy Court reasonably concluded that it felt conversion was necessary in light of Halvajian's inability, after 22 months in Chapter 11, to present a confirmable plan of reorganization. This Court agrees.

As for Halvajian's appeal of the portion of the March 3, 1997 Order relieving ALI of its obligation under the ALI Settlement and Consent Order, the Court agrees with ALI's argument that when the Bankruptcy Court decided to convert the current case, the ruling regarding the ALI Settlement and Consent Order was rendered moot. Indeed, as ALI contends, "it is precisely for this reason that the language in the proposed form of order submitted by ALI [and used by the Bankruptcy Court] which expressly permitted ALI to file a new substitute ballot against the Debtor's [P]lan was manually struck out by the Bankruptcy Judge when she entered the March 3, 1997 Order." (ALI

**514**

8/29/97 Letter Opp. at 2; *see* 3/3/97 Transcript at 72.) Further, the Court deems Halvajian's claim that his inability to set forth a confirmable reorganization plan due to ALI's request to be relieved of its obligations under the January 1997 Consent Order to be meritless; significantly, Halvajian himself admitted that he lacked adequate financing to fund his Plan.

## CONCLUSION

For the foregoing reasons, the Court will hold that the Bankruptcy Court did not abuse its discretion in converting the current case from Chapter 11 to Chapter 7.