**Ralphaell V. WILKINS, Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INS. CO., Appellee.**

**No. 14–99–01217–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

July 26, 2001.

Rehearing Overruled Sept. 6, 2001.

Joseph F. Nistico, Jr., Houston, for appellant.

M. Michael Kessler, Houston, for appellee.

Panel consists of Justices YATES, HUDSON, and DRAUGHN.

## OPINION

YATES, Justice.

Appellant, Ralphaell Wilkins, appeals the trial court's entry of an order appointing a receiver and for turnover after judgment ("the turnover order"). Essentially, Wilkins argues that the trial court lacked jurisdiction to enter the turnover order because a turnover order can only follow from a final judgment, and since the basis of appellee's application for turnover is a contempt order with accompanying sanctions ("the contempt order") entered in an ongoing bankruptcy proceeding, there is no final judgment which can form the basis of the turnover order. Appellee, State Farm Mutual Automobile Insurance Company, contends that this Court lacks jurisdiction to hear this appeal because the turnover order is interlocutory, and Wilkins failed to file a notice of appeal within the time frame allowed for accelerated appeals from interlocutory orders. Alternatively, State Farm contends that the contempt order is a final order pursuant to bankruptcy law; Wilkins had a limited time within which to appeal that order; and because he has not done so, it is now a final judgment. Moreover, State Farm argues that, even if the contempt order was not final, the order converting Wilkins's bankruptcy from a Chapter 13 to a Chapter 7 bankruptcy ("the conversion order") was final; the contempt order merged into the conversion order; and Wilkins's failure to appeal the conversion of his bankruptcy has rendered final all orders entered be-

fore the conversion. We affirm the trial court's judgment.

## I. Background Facts and Procedural History

Wilkins filed for Chapter 13 bankruptcy protection in 1998. In connection therewith, State Farm, a creditor of Wilkins's,[1] filed the bankruptcy equivalent of a deposition notice and request for production of documents.[2] In response, Wilkins filed a motion for protection, which the bankruptcy judge denied by written order. Although Wilkins appeared as ordered, he evidently failed to produce the documents sought by State Farm or to file objections with a privilege log as ordered by the court. On July 29, 1998, the bankruptcy judge entered an order finding Wilkins in contempt and ordering that he pay State Farm $7,116.25, as "attorney fees and costs ... incurred by State Farm as a result of [Wilkins's] violation of this Court's prior order." The order also provided that, as a result of Wilkins's prior conduct, "all objections that could have [been] asserted to the production of documents ... are deemed waived," and future noncompliance with the court's order "shall result in the immediate conversion of [Wilkins's] Chapter 13 Bankruptcy to a Chapter 7 Bankruptcy and the immediate denial of Debtor's discharge under Chapter 7, *all as a discovery sanction.*"[3] On October 16, 1998, the bankruptcy court did as promised in July—converting Wilkins's bankruptcy to Chapter 7 with a finding that "the totality of circumstances surrounding [Wilkins's] Bankruptcy and his abuse of the Bankruptcy Court constitutes cause to convert...."

1. State Farm alleged that Wilkins, an attorney, helped clients stage 153 automobile accidents, and that State Farm paid claims filed as a result of those accidents.

2. FED.R.BANKR.P. 2004.

3. The italicized portion was handwritten and initialed by the judge.

On July 1, 1999, State Farm filed its petition for turnover and appointment of receiver.[4] On July 14, 1999, the county court entered the turnover order. Earlier that same day, Wilkins filed a notice of automatic stay pursuant to his bankruptcy.[5] On July 27, 1998, Wilkins went to bankruptcy court and filed an emergency motion for contempt, sanctions, and to set aside the county court's turnover order.[6] Wilkins does not assign as error the trial court's apparent disregard of the notice of automatic stay. In any event, the bankruptcy court denied the motion and dismissed it with prejudice on August 27, 1999. On September 23, 1999, however, the bankruptcy court entered another order in connection with Wilkins's emergency motion. While this order again denied the relief sought by Wilkins, it further ordered that the receiver "prepare a monthly accounting to [the] Chapter 7 Trustee and [the bankruptcy court] describing the value and disposition of the property obtained and the receiver shall consult with [the trustee] prior to disbursement of any assets as a result of [the turnover order] and that assets collected by the receiver shall be non bankruptcy [sic] assets."

## II. Appellate Jurisdiction

■ In response to the court's turnover order, Wilkins filed a motion for new trial on August 6, 1999, and his notice of appeal on October 1, 1999. State Farm argues that the motion for new trial did not have the effect of extending the time within which Wilkins could perfect his appeal because the turnover order was an interlocutory order; thus, State Farm contends Wilkins had only 20 days from July 14,

1999—the day the turnover order was signed—to appeal. Accordingly, State Farm concludes that, because Wilkins filed his notice of appeal more than 20 days after the turnover order was signed, his appeal did not invoke the jurisdiction of this Court. We disagree.

■ Texas allows a party to appeal from "an *interlocutory order* . . . that appoints a receiver. . . ." TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(a)(1) (Vernon 1997 & Supp. 2000) (emphasis added). "An appeal from an interlocutory order, when allowed, will be accelerated. Filing a motion for new trial will not extend the time to perfect an appeal." TEX.R.APP. P. 28.1. An accelerated appeal must be perfected within 20 days from the day the order being appealed was signed. TEX.R.AP. P. 26.1(b). Section 51.014(a) of the Civil Practice and Remedies Code contemplates that not all orders appointing a receiver will be interlocutory in nature. Ordinarily, appointing a receiver begins a proceeding. A turnover order, however, is a final order, even though it may appoint a receiver. *Burns v. Miller, Hiersche, Martens & Hayward, P.C.*, 909 S.W.2d 505, 506 (Tex.1995) (per curiam). This is so because the order disposes of "all the parties and all the issues, leaving nothing for further decision except as necessary to carry the decree into effect." *Starr v. Starr*, 690 S.W.2d 86, 88 (Tex.App.—Dallas 1985, no writ) (per curiam) (citing *Hargrove v. Insurance Inv. Corp.*, 142 Tex. 111, 176 S.W.2d 744, 747 (1944)). Wilkins's motion for new trial, filed within 30 days of the trial court's order, therefore, had the effect of extending the appellate deadlines. Accordingly, the turnover order was final, his notice of

---

4. TEX.CIV.PRAC. & REM.CODE ANN. §§ 31.002(b)(1), (3) (Vernon 1997).

5. 11 U.S.C.A. § 362 (1993 & Pamph.2000).

6. Wilkins sought to hold State Farm, its attorneys, the county judge, and the receiver in contempt.

appeal timely and proper, and this Court has jurisdiction to hear this appeal.

## III. Was The Conversion Order Final and, If So, Did the Contempt Order Merge into the Conversion Order?

Having found that this Court has jurisdiction to hear his appeal, we now turn to Wilkins's argument that the trial court abused its discretion in entering the turnover order because the contempt order entered by the bankruptcy court was not a "final judgment" within the meaning of the turnover statute.[7] TEX.CIV.PRAC. & REM. CODE ANN. §§ 31.002(b)(1), (3) (Vernon 1997). Resolution of this issue, therefore, necessarily turns on whether there was a final judgment entered by the bankruptcy court.[8]

■ The rule for determining finality in the context of a bankruptcy proceeding is different than the rule for determining finality in an ordinary civil case. *Calcasieu Marine Nat'l Bank v. Morrell (In re Morrell)*, 880 F.2d 855, 856 (5th Cir.1989) (citing 1 COLLIER ON BANKRUPTCY § 3.03[6][b] at 3–181 (1989)). An order, which otherwise would appear to be interlocutory in a civil case may be final for purposes of a bankruptcy proceeding. *See, e.g., Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.)*, 62 F.3d 730, 733 (5th Cir.1995) ("[A]n order which ends a discrete judicial unit in the larger case concludes a bankruptcy proceeding and is a final judgment for the purposes of section [28 U.S.C.A.] § 158(d)."); *see also After Six, Inc. v. Abraham Zion Corp. (In re After Six, Inc.)*, 167 B.R. 35, 40 (Bankr. E.D.Pa.1994) ("[I]n bankruptcy proceedings, it is generally the particular adversary proceeding or controversy that the court must have finally resolved, rather than the entire bankruptcy for a decision to be final."), *aff'd*, 1994 WL 125219 (E.D.Pa. Apr.12, 1994).

■ Section 158 establishes appellate jurisdiction in federal district courts "from final judgments, orders, and decrees." 28 U.S.C.A. § 158(a) (1993). The courts of appeals have "jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section." *Id.* at § (d). If a bankruptcy order is appealed, but the appeal is not timely, then neither the district court nor the court of appeals has jurisdiction to hear the appeal. *Don Vicente Ma-*

---

7. Although Wilkins's brief presents four issues, all of them necessarily turn on whether the bankruptcy contempt order was a final judgment. For instance, one issue asks whether the trial court abused its discretion by expanding the scope of the turnover statute by applying it to non-judgment creditors, and another asks whether the trial court committed fundamental error because it had no jurisdiction to enter the turnover order since there was no final judgment in place. Accordingly, we need only decide whether the bankruptcy court's contempt order or conversion order was final in connection with these points.

8. Citing a Texas Supreme Court case and a case from this Court, Wilkins argues that a "sanctions order" is not final under Texas law. However, we believe a proper resolution of this case turns on whether the order was final within the meaning of federal law on bankruptcy, as appellant seems to implicitly recognize, not state law. Furthermore, the bankruptcy case appellant cites, *Promenade Nat'l Bank v. Phillips (In re Phillips)*, 844 F.2d 230 (5th Cir.1988), is not on point. There, the Fifth Circuit had to decide whether an order determining that a debtor was eligible to have a voluntary petition dismissed was interlocutory or final. In holding that it was interlocutory, the court reasoned it "is a 'preliminary step in some phase of the bankruptcy proceeding' [which] does not 'directly affect' the disposition of the estate's assets." *Id.* at 236. For the reasons set forth below, the conversion order in this case was not a "preliminary step" in the bankruptcy process; rather, it ended one bankruptcy and began another.

*cias, Inc. v. Texas Gulf Trawling Co. (In re Don Vicente Macias, Inc.),* 168 F.3d 209, 211 (5th Cir.1999), *cert. denied,* 528 U.S. 986, 120 S.Ct. 446, 145 L.Ed.2d 363 (1999). Similarly, if an appeal is filed from an interlocutory order and the court entering the order has not granted leave, no appellate jurisdiction lies in either the district court or the appellate court. *See, e.g., In re Eagle Bus Mfg., Inc.,* 62 F.3d at 733. A debtor has ten days to appeal a "final" bankruptcy order. FED.R.BANKR.P. 8002(a); *Stangel v. United States (In re Stangel),* 219 F.3d 498, 500 (5th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1240, 149 L.Ed.2d 147 (2001); *cf. In re Smith Corset Shops, Inc.,* 696 F.2d 971, 977 (1st Cir.1982) (finding notice of appeal timely where it was filed within 10 days of court's clarifying letter, where letter was deemed to constitute "final judgment," not memorandum and order entered nearly three months earlier).

In short, if either the contempt order or the conversion order were final, then Wilkins had ten days from July 29, 1998 or October 16, 1998, respectively, within which to file an appeal. It is uncontested that Wilkins never appealed either order. Instead, Wilkins argues that the contempt order is merely interlocutory and "did not *directly* affect the disposition of the estate's assets." [9] (Emphasis our own.) Alternatively, State Farm argues that, even if the contempt order is not a final order, under the merger rule in bankruptcy, the contempt order merged into the conversion order, and because the conversion order was a final order from which Wilkins failed to appeal, the conversion order can now form the basis of the trial court's turnover order. For the following reasons, we hold that the conversion was a final, appealable order within the meaning of the Bankruptcy Code. We also hold that the contempt order merged into the conversion order. We address each of these arguments in turn.

## A. Finality of The Conversion Order

We agree with the reasoning of the District Court of New Jersey that, "conversion ... changes the very essence of a case in bankruptcy ... [because it] conclusively determine[s] a discrete issue—control over the bankruptcy estate's assets. Thus, in light of the liberal interpretation of finality" in the bankruptcy context, we hold that the bankruptcy court's October 16, 1998 order converting Wilkins Chapter 13 bankruptcy to Chapter 7 was final within the meaning of 28 U.S.C.A. § 158(d). *Halvajian v. Bank of New York (In re Halvajian),* 216 B.R. 502, 510 (Bankr. D.N.J.1998); *accord Vista Foods U.S.A., Inc. v. Unsecured Creditors' Comm. (In re Vista Foods U.S.A., Inc.),* 202 B.R. 499, 500 (10th Cir.BAP1996) (per curiam) (holding that, because order converting bankruptcy from Chapter 11 to Chapter 7 was final, leave of court to file notice of appeal was unnecessary); *Koerner v. Colonial Bank (In re Koerner),* 800 F.2d 1358, 1367 (5th Cir.1986) (recognizing appellate jurisdiction over conversion of bankruptcy from Chapter 11 to Chapter 7); *In re Firstcent Shopping Ctr., Inc.,* 141 B.R. 546, 550–51 (Bankr.S.D.N.Y.1992) (stating rule that conversion of a bankruptcy case is final); *Gould v. Gregg, Hart, Farris & Rutledge (In re Gould),* 137 B.R. 761, 763 (Bankr. W.D.Ark.1992) (holding order denying confirmation of debtor's Chapter 13 plan and requiring him to convert case to Chapter 7 or 11 proceeding within 20 days was "final" for appellate purposes); *see also In re*

---

**9.** Wilkins is correct about this second point: The bankruptcy court's September 23, 1999 order expressly noted that the "assets collect-

ed by the receiver [under the turnover order] shall be non bankruptcy [sic] assets."

*Rebeor,* 89 B.R. 314, 321 (Bankr.N.D.N.Y. 1988) (stating the policy behind treating a conversion order as final is the necessity for immediate review to protect the debtor's substantive rights to reorganize in Chapter 13 and to prevent irreparable harm through the potential loss of his property sold to good faith purchasers).[10]

▮▮▮ Moreover, the Supreme Court of the United States has held that Congress has the authority, under the Bankruptcy Clause of the Constitution, to grant bankruptcy courts the right to issue *final* orders in proceedings that are at the core of its jurisdiction, *i.e.,* those resting primarily on the restructuring of the debtor-creditor relationship. *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 71–72 & n. 26, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Orders entered as part of a bankruptcy court's core proceedings are considered final and appealable. *Halper v. Halper,* 164 F.3d 830, 839–40 (3d Cir.1999); *Bank of Lafayette v. Baudoin, (In re Baudoin),* 981 F.2d 736, 740 (5th Cir.1993); *cf. M.A. Baheth Constr. Co. v. Schott, (In re M.A. Baheth Constr. Co.),* 118 F.3d 1082, 1084 (5th Cir.1997) (stating failure to object to the bankruptcy court's assumption of core jurisdiction resulted in implied consent to the court's entry of final judgment). Core proceedings include "proceedings to determine, avoid, or recover fraudulent conveyances." 28 U.S.C.A. § 157(h) (1993). The order here had the effect of restructuring the debtor-creditor relationship. Throughout Wilkins's bankruptcy, State Farm argued he was guilty of fraud based on the insurance company's allegation that Wilkins helped stage 153 automobile accidents. "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title *does not* discharge an individual debtor from any debt … for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C.A. 523(a)(2)(A) (1993) (emphasis added). But a Chapter 13 bankruptcy would allow Wilkins to partially discharge these debts, even including those incurred as a result of his allegedly fraudulent conduct, "after completion by the debtor of all payments under the [confirmation] plan." 11 U.S.C.A. 1328(a) (1993). Therefore, we hold that the conversion order was final within the meaning of the Bankruptcy Code because it changed the very essence of the relationship between State Farm and Wilkins—Wilkins could no longer have any portion of his fraudulently incurred debt discharged after the court converted his bankruptcy to Chapter 7. *See also In re Halvajian,* 216 B.R. 502, 510.

**B.  Did the Contempt Order Merge Into the Conversion Order?**

▮▮▮ Having found the order converting Wilkins's bankruptcy was final, we now turn to whether the contempt order merged into the conversion order. An order, even if interlocutory, is nevertheless final and appealable if it has merged into a subsequent order which, by its nature, is a final, appealable order. *See, e.g., Ben Coo-*

---

10. We are aware that some courts, citing to the Fifth Circuit, have taken a different view. *See, e.g., Guyther v. Hebb (In re Hebb),* 53 B.R. 1003, 1005–06 (D.Md.1985) (citing *Stewart v. Kutner (In re Kutner),* 656 F.2d 1107 (5th Cir.1981)). But *In re Kutner* considered whether an order *denying* a motion to convert was interlocutory or final and concluded it was the former because it was "an incidental procedural matter during the proceedings in the bankruptcy court…." *In re Kutner,* 656 F.2d at 1111. In short, all *In re Kutner* held was that an order *denying* a motion to convert did not "change the very essence" f the bankruptcy estate.

*per, Inc. v. Insurance Co. of Pennsylvania, (In re Ben Cooper, Inc.)*, 924 F.2d 36, 38 (2d Cir.1991) (finding court had appellate jurisdiction even though withdrawal of reference to bankruptcy was interlocutory non-appealable order, where abstention decision was appealable, and interlocutory withdrawal order merged into final judgment). It does not stand to reason that Wilkins is required to appeal the conversion order ten days after its entry, but can wait until after concluding Chapter 7 to appeal the contempt order, an argument he bases upon the assumption that the contempt order "did not directly affect the disposition of the estate's assets." *See, e.g., Silverman v. Tracar, S.A. (In re American Preferred Prescription, Inc.)*, 255 F.3d 87, 93–94 (2d Cir. 2001) (stating creditor lost right to challenge trustee's authority where creditor failed to avail itself of opportunity to do so when trustee was appointed 11 months earlier); *cf. Brandt v. Wand Partners*, 242 F.3d 6, 17 (1st Cir.2001) (finding jurisdiction to hear appeal in adversary proceeding regarding discovery orders issued by bankruptcy court and modified by district court).

Because there was a final order upon which the trial court could base the turnover order, we find no abuse its discretion.[11]

11. Similarly, not long ago, the Fifth Circuit stated that "[i]t is well-settled that a civil contempt order is not 'final' for purposes of appeal unless two actions occur: (1) a finding of contempt is issued, and (2) an appropriate sanction is imposed." *United States Abatement Corp. v. Mobil Expl. & Producing U.S., Inc. (In re U.S. Abatement Corp.)*, 39 F.3d 563, 567 (5th Cir.1994) (citing cases). In *In re U.S. Abatement Corp.*, the issue was whether the bankruptcy court lacked jurisdiction to reconsider its original order which found Mobil in contempt. The Fifth Circuit held that the original order was not final "because no assessment of sanctions ever occurred." *Id.* at 567. Accordingly, the bankruptcy court

The judgment of the trial court is affirmed.

did not lose jurisdiction and could reconsider its original order of contempt. *Id.* Here, unlike the situation in *In re U.S. Abatement*, the bankruptcy court's order not only found Wilkins in contempt, it also assessed sanctions. *See, e.g., Drummond Co. v. District 20, United Mine Workers*, 598 F.2d 381, 383 (5th Cir. 1979) (distinguishing between orders "imposing a fine or penalty for contempt which may be avoided by the party purging himself of the contempt by complying with the order, and those in which a fine or penalty is imposed within a time certain that may not be avoided by some other form of compliance," before concluding that only orders falling in the second category are immediately appealable).